UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| TEXTRON FINANCIAL CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil No. 06-cv-140-P-C |
| PAUL MULHERIN & FATHER, INC., D/B/A PETE'S GARAGE and PAUL MULHERIN, | ) ) ) ) ) |
| Defendants. | ) |

**RECOMMENDED DECISION ON MOTION TO DISMISS COUNTERCLAIM**

Textron Financial Corporation afforded financing to Paul Mulherin & Father, Inc., d/b/a Pete's Garage, so that Pete's Garage could obtain Artic Cat inventory for its showroom in Fryeburg. In this action Textron seeks to enforce a dealer program agreement and wholesale security agreement executed by Pete's Garage, and a personal guaranty executed by Paul Mulherin, based on an alleged default by Pete's Garage. Pete's Garage has filed a counterclaim in which it alleges that Arctic Cat Sales, Inc., breached its franchise agreement and violated certain state laws so that the Court should rescind the financing agreement between Pete's Garage and Textron and award damages against Textron. Now pending is Textron's motion to dismiss the counterclaim on the ground that it cannot be liable, as a matter of law, for contract breaches and statutory violations committed by Artic Cat, a third party.

**12(b)(6) STANDARD**

Pursuant to Rule 12(b)(6) a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief may be

granted." Fed. R. Civ. P. 12(b)(6). When considering a motion under Rule 12(b)(6) the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, when taken in the light most favorable to the nonmovant, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commer. Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998). The pleader need only make a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), but at a minimum the pleader must "give respondent fair notice of what [the] claims are and the grounds upon which they rest." Swierkiewicz v. Sorema N. A., 534 U.S. 506, 514 (2002). A motion to dismiss is to be granted only when it is clear that "no relief could be granted under any set of facts that could be proved consistent with the allegations." Id. (quoting Hirshon v. King & Spaulding, 467 U.S. 69, 73 (1984)). Confusion over the scope of a claim is to be addressed by a motion for a more definite statement per Rule 12(e) and "claims lacking merit may be dealt with through summary judgment under Rule 56." Id.

## Background

The defendants (collectively, "Pete's Garage") base their counterclaims on the following material allegations:

    1. Defendant/Plaintiff in Counterclaim Paul Mulherin & Father, Inc. is a Maine corporation with a usual place of business in Fryeburg, Oxford County, Maine.

    2. ARCTIC CAT SALES, INC. ("Arctic Cat") is a Minnesota corporation with a usual place of business at 600 Brooks Avenue, Thief River Falls, Minnesota 56701.

    3. Plaintiff/Defendant in Counterclaim TEXTRON FINANCIAL CORPORATION is, on information and belief, a Delaware corporation with a usual place of business at 40 Westminster Street, Providence, Rhode Island.

4. On or about March 1, 2005, Plaintiff in Counterclaim and Arctic Cat entered into a dealer agreement ("Dealer Agreement") whereby, inter alia, Arctic Cat agreed to supply and Plaintiff in Counterclaim agreed to market snowmobiles and related gear and equipment.  A copy of the dealer agreement is attached hereto as Exhibit A.

5. Plaintiff in Counterclaim thereby became a franchisee and Arctic Cat a franchisor as those terms are defined in Title 10 M.R.S.A. §1242, the Maine Personal Sports Mobile Business Practices Act ("Act").

6. At the urging of and as a tacit condition of its contract with Arctic Cat, Plaintiff in Counterclaim entered into the Dealer Program Letter agreement, the Wholesale Security Agreement and the Guaranty (collectively "Financing Agreement") with Defendant in Counterclaim TEXTRON FINANCIAL CORPORATION, copies of which agreements are attached to the Complaint as Exhibits A, B and C.

7. Arctic Cat has breached its obligations to Plaintiff in Counterclaim under the Act and notice of several of its violations was given to it on or about February 13, 2006.

8. Arctic Cat's breach has caused financial loss to Plaintiff.

9. Defendant in Counterclaim TEXTRON FINANCIAL CORPORATION is tied into Arctic Cat such that the conduct of Arctic Cat may be imputed to Defendant in Counterclaim TEXTRON FINANCIAL CORPORATION.

* * * *

11. The breaches by Arctic Cat of the Dealer Agreement are attributable to Defendant in Counterclaim TEXTRON FINANCIAL CORPORATION and constitute a failure of consideration entitling Plaintiff in Counterclaim to rescind the Financing Agreement.

* * * *

16. Arctic Cat has violated several provisions of Title 10 M.R.S.A. §§1241 et seq., the Personal Sports Mobile Business Practices Act by, inter alia,
   A. establishing other dealerships within a 30-mile radius of Plaintiff in Counterclaim's dealership in violation of §§1243 and 1244;
   B. requiring Plaintiff in Counterclaim to participate in advertising campaigns and to purchase promotional materials in violation of §1243.C; and
   C. requiring Plaintiff in Counterclaim to notify purchasers of recalls and to indemnify and hold Arctic Cat harmless against losses, costs and attorney fees sustained by Arctic Cat, in violation of §1247.

> 17. Defendant in Counterclaim is, by virtue of its relationship with Arctic Cat, responsible to Plaintiff in Counterclaim for the violations by Arctic Cat.

(Counterclaim, Docket No. 10.)

## Discussion

In its motion to dismiss, Textron argues that the counterclaim must be dismissed because it is "based only on the wholly unsupported legal conclusion that Textron is somehow liable for Arctic Cat's independent acts." (Mot. to Dismiss at 1, Docket No. 19.) Textron highlights paragraph 6 of the counterclaim and argues that, as a matter of law, the alleged "urging" and "tacit condition" are not sufficient to make Textron liable for Arctic Cat's alleged conduct. (Id. at 4.) Textron asserts that the allegations are not sufficient to support an inference of an agency relationship or a partnership relationship between Textron and Arctic Cat. (Id. at 4-5.) As for the "tacit condition," Textron asserts that the underlying dealer agreement speaks for itself and is not conditioned on the existence of a financing arrangement between Pete's Garage and Textron. (Id. at 5-6.) The underlying agreement for ATV inventory states:

> Dealer shall have financing satisfactory to Company through one of the Company's designated wholesale financing institutions, or other financing institution or financing that is pre-approved by Company that will allow Dealer to take delivery of and pay for Products within 10 days after Company notifies Dealer that Products are ready for delivery to Dealer.

(Arctic Cat Sales Inc. Dealer Agreement (ATVs) § 5.6, Docket No. 22, Ex. A.) The agreement pertaining to snowmobile inventory has this language and adds the following language:

> Failure to have such financing shall be sufficient grounds for Company to terminate this Agreement . . . . Dealer acknowledges that the Company will provide interest assistance on financing only to those Dealers who have financing through one of the Company's designated wholesale financing institutions and in good standing with that financing institution.

4

(Arctic Cat Sales Inc. Dealer Agreement (Snowmobile) § 5.7, Docket No. 22, Ex. B.)[1] I incorporate these provisions for purposes of determining the pending motion because the underlying dealership agreements are referenced in paragraph 4 of the counterclaim, and because Pete's Garage points to the provisions in support of its counterclaim. (Def.'s Opp'n at 3.) Pete's Garage also attempts to make an evidentiary showing by citing an affidavit and a letter of correspondence, but I do not incorporate the content of these other documents because they are neither referred to nor attached as exhibits to the complaint or counterclaim. (Id. at 3-4.) Additionally, Pete's Garage has elected at this time not to introduce the additional factual content by means of an amended complaint. In the absence of any proposed amended counterclaim the existing counterclaim is the only pleading to evaluate.

In its opposition memorandum, Pete's Garage asserts that its counterclaim alleges, or supports an inference, that Textron and Arctic Cat are engaged in a partnership enterprise in regard to the sale and financing of Arctic Cat inventory and that Textron is, therefore, jointly liable for the conduct of its partner in regard to their joint enterprise. (Def.'s Opp'n at 1-2, Docket No. 22.) Pete's Garage requests time to conduct "some discovery to show all the interlocking arrangements between Arctic Cat and Textron." (Id. at 3.) It contends that such discovery will better illustrate how Arctic Cat participates in determining the financing terms set for its dealers. (Id. at 3-5.)

"[T]he existence of a partnership is an inference of law based on established facts." Dalton v. Austin, 432 A.2d 774, 777 (Me. 1981). A partnership consists of two or more persons who carry on, as co-owners, a business for profit. Id. "Evidence relevant to the existence of a partnership includes evidence of a voluntary contract between two persons to place their money,

---

[1] Textron asserts that the exhibit is an attachment to the counterclaim, but I do not see it at that location on the docket. In any event, Pete's Garage attaches the document to its opposition memorandum (Docket No. 22).

effects, labor, and skill, or some or all of them, in lawful commerce or business with the understanding that a community of profits will be shared." Id. "[T]he right to participate in control of the business is the essence of co-ownership." Id.[2]

The counterclaim does not allege the existence of a partnership relationship. Both parties' pleadings and incorporated documents reflect that Textron and Arctic Cat are separate corporate entities each having a separate contractual relationship with Pete's Garage. Textron is not a signatory to the franchise contracts that were allegedly breached by Arctic Cat. By like token, Arctic Cat is not a signatory to the finance agreement or security agreement upon which Textron's complaint depends. Thus, if a partnership or joint venture relationship is to be found in the counterclaim, it must be arrived at by means of an inferential deduction. The only allegations to which such an inference could possibly be tethered are those set forth in paragraphs 6 and 9 of the counterclaim.[3] As explained below, neither allegation can support the inference. Although the former allegation is factual in nature, it is too limited in scope to even hint at a partnership relationship. By comparison, the latter allegation contains only a kernel of factual content and is otherwise wholly conclusory. The seed of fact that is stated does not provide enough factual context to support the requested inference. As for paragraph 6, it describes conduct on the part of Arctic Cat that begs the question of why Textron should be accountable for the way Arctic Cat managed its franchise. We are told simply that Arctic Cat "urges" its dealers to establish a financing arrangement with Textron and "tacitly" conditions the award of a franchise upon such relationship. The allegation of "tacit" conduct tells the tale. As the plain language of the

---

[2] Textron also argues that the allegations could not support an inference of an agency relationship between Textron and Arctic Cat. (Mot. to Dismiss at 4-5.) Pete's Garage does not challenge that position. There is nothing in the counterclaim that would support an inference that either Textron or Arctic Cat acts on behalf of, and subjects itself to control by, the other. See J & E Air, Inc. v. State Tax Assessor, 2001 ME 95, ¶ 14, 773 A.2d 452, 456 (providing elements of an agency relationship).

[3] The seventeenth allegation alleges that Textron is "responsible" in some fashion "by virtue of its relationship with Arctic Cat." Because this allegation states a legal conclusion, rather than a factual basis upon which the Court might draw such a conclusion, it is unhelpful.

dealership agreements reflect, there is no express condition or requirement that Arctic Cat dealers finance their Arctic Cat inventories through Textron. There is only encouragement or "urging" in the form of a promise that Arctic Cat will provide certain interest assistance. I do not believe the Court can fairly interpret an allegation concerning a tacit condition to amount to an allegation of an express condition. In other words, both the documents and the allegation in paragraph 6 of the counterclaim reflect that Textron was not a necessary participant in the franchise relationship between Pete's Garage and Arctic Cat, a fact that undermines any inference that Textron had a right to exercise control over some "pertinent part" of the larger franchise relationship, <u>Lupien v. Malsbenden</u>, 477 A.2d 746, 747 (Me. 1984),[4] such as over those actions by Arctic Cat that are alleged to have been in violation of state law.[5]

As for paragraph 9, it alleges only that Textron and Arctic Cat are "tied into" one another so "the conduct of Arctic Cat may be imputed" to Textron. There are a variety of ways in which separate corporate entities can be "tied" together without the actions of one being imputed to the other. Without more factual detail, I fail to comprehend how the Court can infer the existence of a partnership or joint venture from this meager allegation that Textron and Arctic cat are "tied into" each other.

---

[4] Pete's Garage argues that the Law Court's opinion in <u>Lupien</u> supports his claim. (Def.'s Opp'n at 2-3.) In <u>Lupien</u>, the defendant supplied financing for an auto sales business that built Bradley kit cars. The court concluded that the defendant was liable as a partner for contract breaches committed by the business not because the defendant was the financier of the operation, but because the defendant actually ran the Bradley component of the business, interacting with customers, acquiring and disposing of business assets, paying wages and having control of the premises. <u>Lupien</u>, 477 A.2d 747-48. In short, the defendant participated in control of the business on a day-to-day basis. <u>Id.</u> at 748-49. There are no allegations in the instant counterclaim that suggest any participation by Textron in the control of Arctic Cat's franchise operations.

[5] Even if Arctic Cat had authority to set some of the terms for inventory financing, as suggested by Pete's Garage (Def.'s Opp'n at 4, ¶ 4), that would not warrant an inference that Textron had any authority to control Arctic Cat's conduct vis-à-vis the franchise operations that Pete's Garage says were in violation of the franchise agreement and state law (opening another dealership within 30 miles of Pete's Garage, requiring Pete's Garage to participate in Arctic Cat advertising campaigns, and requiring Pete's Garage to notify consumers and indemnify Arctic Cat in regard to product recalls). In fact, all of the discovery proposed by Pete's Garage is focused at uncovering Arctic Cat's involvement in determining "interest rates, rebates and interest protection plans" (Def.'s Opp'n at 5) rather than Textron's involvement in franchise operations unrelated to inventory financing. Such conduct on Arctic Cat's part would seem to require a third-party action against Arctic Cat rather than the counterclaim as stated.

## Conclusion

In its current form, the pending complaint is devoid of the kind of *factual* content that would lawfully permit the Court to allow Arctic Cat's conduct relevant to the Pete's Garage Arctic Cat franchise to be treated as conduct on the part of Textron relevant to its finance agreement with Pete's Garage.  Despite the liberality of Rule 8, there simply are no apparent factual grounds from which the requested imputation of conduct might proceed.  For that reason I RECOMMEND that the Court GRANT the motion to dismiss (Docket No. 19).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/Margaret J. Kravchuk
U.S. Magistrate Judge

Dated:  December 12, 2006